UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDLE GRIFFIN,

        Plaintiff,                Case No. 2:14-cv-14290
                                    District Judge Matthew F. Leitman
v.                                 Magistrate Judge Anthony P. Patti

PAUL KLEE, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS (DE 14)

**I.**    **RECOMMENDATION**:  The Court should deny Defendants Paula Klee, Joseph Barrett, and Michelle Parsons' Motion to Dismiss.  (DE 14.)

**II.**    **REPORT**

    **A.**    **Background**

    Plaintiff, a state prisoner proceeding without the assistance of counsel, filed his Complaint and Application to Proceed Without Prepayment of Fees on November 6, 2014, bringing claims under 42 U.S.C. § 1983.  (DE 1 and 2.)  The thrust of Plaintiff's Complaint is that the various Defendants violated his rights under the First Amendment to the United States Constitution by retaliating against him for engaging in protected conduct.  For the purposes of deciding the Motion to

1

Dismiss, the Court will accept the facts alleged in Plaintiff's sworn Complaint as true.

Plaintiff lays out his experiences at three Michigan Department of Corrections ("MDOC") correctional facilities: the Gus Harrison Correctional Facility ("Gus Harrison"), the Lakeland Correctional Facility ("Lakeland"), and the G. Robert Cotton Correctional Facility ("G. Robert"). Plaintiff was elected to the Warden's Forum at the Gus Harrison facility.[1] (DE 1, ¶ 15.) In the course of his duties, Plaintiff saw an officer assault a fellow prisoner and gave an eye-witness account of the incident to the Legislative Ombudsman. After recounting the incident, another inmate overheard officers indicating that they would file false complaints against Plaintiff in retaliation for his testimony. On March 4, 2011 Plaintiff lodged a formal complaint to Defendant Klee, the Gus Harrison Warden, and filed a grievance against the same for failure to address the retaliation. (Id. at ¶ 20.) On March 10, 2011, Plaintiff was removed from the Warden's Forum. (Id. at ¶ 21.) Furthermore, on or around March 22, 2011, Defendant Klee submitted a request to permanently prohibit Plaintiff's participation in the Warden's Forum. (Id. at ¶ 32.) Plaintiff was transferred to Lakeland in April 2011.

---

[1] The Warden's Forum is an elected group of prisoners that "advises the warden on prisoners' day to day concerns at their particular facility." *Griffin v. Berghuis*, No. 11-14876, 2012 U.S. Dist. LEXIS 139405, at *1 n. 1 (E.D. Mich. Aug. 3, 2012).

2

In December 2011, Plaintiff was elected to the Warden's Forum at Lakeland. Plaintiff attended one meeting of the Forum and "raised serious issues on behalf of uneducated prisoners whom otherwise could not seek redress without [P]laintiff's assistance." (DE 1, ¶ 23.) On January 9, 2012, Plaintiff was informed that he had been permanently removed from the Warden's Forum due to a memorandum submitted by Defendant Klee. Plaintiff filed a grievance against Defendant Klee for sending the memorandum. The grievance was denied at Step III. (Id. at ¶ 29.) On January 10, 2012, Plaintiff was transferred from Lakeland to G. Robert.

When Plaintiff arrived at G. Robert, he was housed in a Level II unit. After an hour, however, Plaintiff was informed that his security confinement status had been increased to Level IV. (DE 1, ¶ 37.) Plaintiff received conflicting accounts as to why his security level had increased. Defendant Parsons, the Assistant Resident Unit Supervisor, indicated that Defendant Barrett, the Deputy Warden, ordered that the security level be increased to monitor Plaintiff for trying to take over the Warden's Forum at his previous institutions. (Id. at ¶ 38.) Plaintiff filed a formal complaint and a grievance about the increase in his security level and resulting lack of access to his legal materials. (Id. at ¶¶ 41-42.) The grievance was denied at Step I, with a note that the increase in security level was caused by a lack of bed space. (Id. at ¶ 46.) Through some discussions with other prisoners, Plaintiff learned that others were improperly moved to a bed in a lower security

3

level before him.  This apparently made him doubt the explanation that the security

level increase was due to a lack of bed space and he appealed the grievance to Step

II.  At Step II, Plaintiff was moved down to his previous security level with a note

that, while Plaintiff should have been moved before certain other prisoners, it was

an unintentional administrative error that had been rectified.  (Id. at 48.)   During

this period in time and before his security level was decreased, Plaintiff filed a

complaint in the Eastern District of Michigan alleging he was denied access to his

legal property.  That case remains pending before the Court.  *See Griffin v.*

*Berghuis, et al.*, No. 5:11-cv-14876 (E.D. Mich.).[2]

Plaintiff asks the Court to award declaratory relief, along with compensatory

and punitive damages.  He sues the Defendants in their individual capacities.

Defendants Klee, Barrett, and Parsons ("MDOC Defendants") filed the

---

[2]  Case No. 5:11-cv-14876 addresses issues similar to the instant action, but is
unrelated to the actions of the Defendants in this case.  Specifically, in the previous
case, Plaintiff brings claims against the Warden and Deputy Warden at the Earnest
C. Brooks Correctional Facility, along with the prison guards alleged to have made
phony misconduct charges against him in retaliation for speaking out on behalf of
another prisoner.  The Sixth Circuit recently reversed the district court's grant of
summary judgment to the prison guards, and affirmed its grant as to the Warden
and Deputy Warden based on qualified immunity.  Defendants in this action rely
on the district court's grant of summary judgment in case No. 5:11-cv-14876 as the
authority for why the instant action should be dismissed, although the parties,
claims, and legal issues differ in pertinent respects.

instant Motion on January 8, 2015.[3] (DE 14.) In their Motion, Defendants assert that Plaintiff has failed to make a claim for First Amendment Retaliation because his participation in the Warden's Forum was not protected conduct. Defendants note further that, because Plaintiff's removal from the Warden's Forum did not involve protected conduct, his later removal based on his prior actions is not an adverse action for the purposes of First Amendment retaliation.

Plaintiff opposes the Motion. In his Response, Plaintiff indicates that Defendants have misstated the facts alleged in his Complaint. Instead, according to Plaintiff, his actual allegation is that Defendants Parsons and Barrett increased his security level as retaliation for his past actions, including his eyewitness account of the attack on a fellow prisoner and his various grievances. Plaintiff asserts that such conduct is protected because he has the right to petition the government for the redress of grievances. In addition, he asserts that he has the right to aid other prisoners who are unable to seek meaningful legal relief without his help. He argues that Defendant Klee took an adverse action against him by denying him the ability to be a member of the Warden's Forum. Plaintiff notes that he "never alleged that the Warden's Forum was [p]rotected [c]onduct, but instead alleged that Paul Klee retaliated against [him] for filing a grievance against him, [a] complaint to [the] Ombudsman, and giving an eyewitness account to [the]

---

[3] To date, Defendant Vest has not appeared in the case and was not included in this Motion to Dismiss.

Ombudsman against Klee's staff for assaulting prisoner Bryant." (DE 18 at 3.) He indicates that, while his participation on the Warden's Forum was a privilege, prison administrators are not free to grant or withhold privileges for impermissible reasons such as retaliation. According to Plaintiff, Defendant Klee's memorandum was intended to "chill Plaintiff from engaging in future protected conduct. . . ." (DE 18 at 6.)

## B.   Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of

6

competing explanations for the defendant's conduct." *16630 Southfield Ltd.,*

*P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).

### C.    Preliminary Comment on the Quality and Substance of Defendants' Motion

Defendants' motion asserts that: the Court lacks subject matter jurisdiction;

Plaintiff's claims are barred by qualified immunity; and that, Plaintiff fails to state

a claim upon which relief can be granted.  (DE 14 at 1-2.)  The Court gets the

distinct impression, however, that this is simply a "canned motion" which gets

repeatedly filed in prisoner civil rights cases, because (notwithstanding the

language in the actual motion) the only issue actually identified for adjudication or

briefed – and barely so at that – is the question of whether Plaintiff's participation

in the Warden's Forum constitutes protected activity.[4]  Defendants' argument, in

its substantive entirety, simply states that:

---

[4] The "Concise Statement of Issues Presented" in Defendants' brief is
incomprehensible, concluding with a single and obviously unedited question

> "It is well established [] that participation in the Warden's Forum is not protected conduct." [Citation to *Griffin v.Berghuis* omitted] Since it has already been determined that Griffin's removal from the Warden's Forum at *LRF* did not involve protected conduct, then it would *stand to reason* that Warden Klee's removal of Griffin from the Warden's Forum at *ARF* based upon that prior removal and Griffin's related actions are not protected conduct. Absent protected conduct, Griffin again fails to set forth a proper retaliation claim.

(DE 14 at 4)(emphasis added). Relying on a prior case by the same Plaintiff against different parties, Defendants are essentially trying to fit a square peg into a round hole, using a "one size fits all" approach, turning a blind eye to substantial differences between what was at issue there and what has been pleaded here.

Defendants ignore – and apparently wish for the Court to ignore – the three other bases for finding protected activity which are pleaded in Plaintiff's Complaint.  (See DE 1, ¶¶ 13, 19, 20, 41, 42, 47, 49, 55.)  The Undersigned will simply not do this.  Instead, in the context of a motion to dismiss under Rule 12, the Court has the right to expect a candid identification and discussion of what was actually pleaded. That did not occur here.

Nor will the Undersigned consider issues which have not been briefed.  *See, e.g., Ordos v. City of Hawtai Autobody Co. v. Diamond Rigging Co.*, No. 13-14909, 2014 WL 1400118, at *5 (E.D. Mich. Apr. 10, 2014) (confining the court's consideration of the issue to what was defined by the parties in the "extensive[],

---

presented, which reads, verbatim, as follows: "Is Plaintiff's retaliation claim, premised upon his participation in the Warden's Forum, subject to dismissal retaliation claim?"

8

yet inadequate[] briefing.").  In an adversarial legal system, the Court should not have to unilaterally devote precious time and resources to researching issues which Defendants made no effort to address.  *United States v. Williams*, 877 F.2d 516, 518-19 (7th Cir. 1989) ("It is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel.").  Moreover, even the one argument which Defendants did make a minimal effort to brief is largely unsupported by legal authority, leaving it for the Court to dig through the case law and connect the dots as to why it should or should not "stand to reason" that "Warden Klee's removal of Griffin from the Warden's Forum at ARF based upon [a] prior removal and Griffin's related actions are not protected conduct."  Fortunately, the incarcerated Plaintiff rose to the occasion, taking the time to thoroughly brief this and other issues. Between that and the Court's own efforts, I am able to recommend that the motion be **DENIED** for the reasons appearing below.

### D.   <u>Analysis</u>

To assert a claim of retaliation under the First Amendment, Plaintiff must show that 1) he was engaged in protected conduct; 2) an adverse action was taken against him that would "deter a person of ordinary firmness" from continuing to engage in the conduct; and 3) there is a causal connection between the elements such that the adverse action was "motivated at least in part by the plaintiff's

protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Undersigned will consider each element in turn.

## 1.    Protected Conduct

Plaintiff contends that he was engaged in several different types of protected conduct.

### a.    Plaintiff's Activities on the Warden's Forum

As best as the Court can discern, Plaintiff seems to plead that his activities on the Warden's Forum were protected conduct under the First Amendment. Defendants dispute this assertion, arguing that participation on the Warden's Forum is not protected conduct.  Defendants rely on *Griffin v. Berghuis*, No. 11-14876, 2012 U.S. Dist. LEXIS 139405 (E.D. Mich. Aug. 3, 2012) for the proposition that "[i]t is well established that participation in the Warden's Forum is not protected conduct."  *Id.* at * 9.  Although that case, and most of the others cited to within *Griffin* were decided at the summary judgment stage, it is nevertheless true that the federal courts in both districts of this state have  consistently held that participation on the Warden's Forum is not activity protected under the First Amendment.  *Reeves v. Chapman*, No. 2:11-cv-11830, 2011 WL 2518843, at *2 (E.D. Mich. June 23, 2011) (concluding that the plaintiff's retaliation claim based on his participation in the Warden's Forum should be dismissed because a "prisoner is not engaged in protected First Amendment activity when appearing as

10

a representative to a warden's forum."); *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) (concluding that the Eastern District of Michigan's grant of summary judgment was appropriate because the plaintiff had no liberty or property interest in his position on the warden's forum); *see also Moore v. Mich. Dep't of Corr.*, 2009 WL 2170369, at *3 (W.D. Mich. July 21, 2009) (concluding that the defendants were entitled to a grant of summary judgment where the plaintiff alleged that "retaliation arose from unspecified issues raised at the warden's forum"); *Davis v. Straub*, No. 1:07-cv-156, 2009 WL 4908433, at *3 (W.D. Mich. Dec. 11, 2009) (concluding that summary judgment was warranted because the plaintiff's removal from Warden's Forum was not an adverse action). Accordingly, Plaintiff fails to sufficiently plead that his participation in the Warden's Forum qualified as protected conduct; however, this is not dispositive, for the reasons given below

### b.    Plaintiff's Other Protected Activities

Notwithstanding the lack of protected activity associated with Plaintiff's participation in the Warden's Forum, Plaintiff posits that he engaged in protected conduct in three other ways.  First, he alleges that Defendants retaliated against him for providing assistance to a specific inmate who would not have been

otherwise able to pursue legal redress.[5]  (DE 1, ¶ 49.)  Such activity is protected

under the First Amendment as a derivative of the other inmate's right of access to

the courts.  *Thaddeus-X*, 175 F.3d at 395; *see also Herron v. Harrison*, 203 F.3d

410, 415-16 (2000) (concluding that an inmate alleging that prison officials

retaliated against him for providing legal assistance to other inmates survived a

motion to dismiss); *King v. Zamiara*, 150 F. App'x 485, 491 (6th Cir. 2005)

(holding that the plaintiff's provision of legal assistance to other inmates was a

protected activity).   Plaintiff has sufficiently pleaded that the other inmate

"otherwise could not seek meaningful redress without [P]laintiff's assistance."

(DE 1, ¶ 49.)  *See Herron*, 203 F.3d at 415 (Noting that, while an inmate does not

have an independent right to help other prisoners, "[s]uch assistance is protected . .

. when the inmate receiving the assistance would otherwise be unable to seek legal

redress.").[6]

Second, Plaintiff alleges that Defendants retaliated against him for filing

grievances against them.  (DE 1, ¶¶ 31, 42, 55.)  "An inmate has an undisputed

First Amendment right to file grievances against prison officials on his own

_____

[5] He also attaches a declaration from the prisoner he is alleged to have assisted.
(DE 18 at 29) ("Without Griffin's assistance, I would not have been able to have
my issues addressed, due to my [lack of] knowledge in the area of administrative
law.").

[6] Although the claim is derivative, it may be pursued independently from whatever
claims the aided prisoner may have.  *See King*, 150 F. App'x  at 491-92; *Herron*,
203 F.3d at 415.

behalf" so long as the grievances are not frivolous. *Herron*, 203 F.3d at 415. Here, there is no indication that Plaintiff's grievances were frivolous. Nor do Defendants, at least at this stage of the litigation, assert that the grievances were frivolous. In fact, the Step II grievance appeal related to his security clearance resulted in the prison official's admission of error and his transfer to a lower security level.

Finally, Plaintiff alleges that Defendant Parsons' actions in increasing and improperly maintaining his security level were taken in retaliation for the complaint he filed in No. 5:11-cv-14876. (DE 1, ¶ 55.) "It is well established that prisoners have a constitutional right of access to the courts." *Thaddeus-X*, 175 F.3d at 391; *see also King*, 150 F. App'x at 491 (concluding that the plaintiff's participation in a lawsuit was protected activity for First Amendment retaliation purposes). Plaintiff was therefore engaging in protected activity by filing his prior complaint.

Construing his present Complaint in the light most favorable to Plaintiff, and accepting his factual allegations as true, Plaintiff has therefore alleged that he engaged in protected activity. Accordingly, Plaintiff has sufficiently pleaded the first element of the test for retaliation under the First Amendment.

13

## 2.    Adverse Action

Plaintiff alleges that Defendants took two adverse actions against him in retaliation for engaging in the above-described protected activities.  First, he indicates that Defendant Klee's memorandum caused him to be removed from the Warden's Forum permanently and at every institution in which he has been or will be incarcerated.  Second, he asserts that Defendants Barrett and Parsons increased his security level and maintained that increase for longer than necessary in retaliation for his past activity of speaking out on behalf of other prisoners, for filing grievances related to his increased security level, and for filing a complaint in federal court.  (DE 1, ¶¶ 32, 42, 49, 55.)  Defendants argue that Plaintiff's permanent removal from the Warden's Forum did not involve protected conduct. The Undersigned will discuss each of these in turn.

### a.    Plaintiff's Permanent Removal from the Warden's Forum

The United States Court of Appeals for the Sixth Circuit has addressed the requirements for an action to be considered adverse in the prison context as follows:

> An adverse action is one that would deter a person of ordinary firmness from the exercise of the right at stake—here, the filing of grievances or lawsuits against prison officials.  Whether an act is sufficiently adverse varies based on context.  The context here is a prison; and prisoners may be required to tolerate more than average citizens before an action taken against them is considered adverse. Even so, however, an act need not be egregious to be adverse.

14

*LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (internal citations and quotations omitted).   This threshold is "not intended to foreclose relief to all but the superfirm plaintiffs," but instead the standard is intended to "avoid trivializing the First Amendment by eliminating suits based upon insignificant acts of retaliation." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see also Thaddeus-X*, 175 F.3d at 398 (noting that the standard  "is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.").  "The factual question is whether the injury inflicted is so slight that it could not reasonably be expected to deter protected conduct." *Bell*, 308 F.3d at 606.

Furthermore, the "adverseness inquiry is an objective one and does not depend upon how the particular plaintiff reacted." *Bell*, 308 F.3d at 606 .  Instead, the "relevant question is whether the defendants' actions are 'capable of deterring a person of ordinary firmness;' there is no requirement that the plaintiff show actual deterrence." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 398).

For the purposes of this Motion to Dismiss, Plaintiff has sufficiently pleaded an adverse action.  It is unsettled in the Sixth Circuit as to whether removal from the Warden's Forum is sufficiently adverse to support a retaliation claim. *Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014).  Because the case law is clear that *participation* in the Warden's Forum is not protected conduct, much of the

15

jurisprudence involves defense motions for summary judgment that are granted on the first element alone, or on other grounds such as qualified immunity.[7]   *See Id.* (concluding that "even if removal from the Forum could be deemed sufficiently adverse," it was not clearly established for the purposes of qualified immunity); *Vandiver v. Martin*, 48 F. App'x 517, 520 (6th Cir. 2002) ("Because Vandiver has not established that he was engaging in protected First Amendment activity as a warden's forum representative, his retaliation claim . . . fails.").[8]

In addition, the Sixth Circuit has explained that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386.   Here, Plaintiff asserts that he was permanently removed from the Warden's Forum in retaliation for filing a grievance against Defendant Klee, and that his removal was sufficiently adverse as to deter a person of ordinary firmness from continuing to engage in protected conduct.   Such an injury is not so slight as to trivialize the First Amendment.   *See,*

---

[7] Defendants do not make a qualified immunity argument in the brief in support of their Motion to Dismiss.

[8] The Court was able to find one unpublished opinion holding that summary judgment was appropriate on the basis that the plaintiff's removal from the Warden's Forum did not constitute an adverse action because the plaintiff adduced no evidence to show that the removal impeded his ability to exercise his First Amendment Rights. *Davis*, 2009 WL 4908433 at *3.   Here, however, the matter is before the Court on a Motion to Dismiss under Rule 12(b)(6), in which the Plaintiff need only offer a claim to relief that is plausible on its face.

16

*e.g., Bart v. Telford*, 677 F.2d 622, 625 (4th Cir. 1982) (noting that it would trivialize the First Amendment to hold that "if the Mayor of Springfield had frowned at Miss Bart . . . he would be liable for damages."). For the purposes of deciding this Motion to Dismiss, Plaintiff has sufficiently pleaded an adverse action related to his permanent removal from the Warden's Forum.

### b.     Increased Security Level

In addition to his removal from the Warden's Forum, Plaintiff asserts that Defendants Barrett and Parsons increased his security level and maintained that increase for longer than necessary in retaliation for his conduct at his previous institutions (DE 1, ¶ 43), specifically for filing grievances related to his increased security level (Id. at ¶ 44), and for filing a complaint in federal court (Id.). Defendants do not address Plaintiff's allegations related to the increase in his security level. Although it is a close case, Plaintiff has sufficiently pleaded that his security level was increased in retaliation for engaging in protected conduct.

An increase in security level constitutes a sufficient adverse action. *King v. Zamiara*, 680 F.3d 485, 487 (6th Cir. 2005) (finding a genuine dispute of material fact regarding a retaliation claim where plaintiff alleged that defendants increased his security level in retaliation for his protected conduct); *Thaddeus-X*, 175 F.3d at 396 ("In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse."). Here, Plaintiff indicates that

17

Defendants Barrett and Parsons increased his security level as a result of Defendant Klee's memorandum and maintained that increase for longer than necessary in retaliation for his filing of grievances and a complaint in federal court. (DE 1, ¶¶ 38 and 44.)  Specifically, he indicates that Defendants initially told him his security level was increased from II to IV as a result of his conduct at his previous institutions.  (DE 43.)  Plaintiff filed a Step I grievance about the custody level increase and was informed that it was merely due to a lack of bed space.  (DE 46.)  When Plaintiff appealed his grievance to Step II, however, he was informed that he should have been moved before other inmates, but was not due to a rare administrative error.  (DE 48.)  While it is unclear in Plaintiff's complaint what "conduct" motivated Defendants Parsons and Barrett to initially increase his security level, to the extent the conduct was related to his participation in the Warden's Forum, it was not protected as summarized above.  Plaintiff does, however, plead that the security level increase was maintained for longer than necessary due to his engaging in the protected conduct of filing grievances and filing a complaint in federal court.  (DE 1, ¶ 44.)  Construing the complaint in the light most favorable to Plaintiff and accepting all of his allegations as true, he has sufficiently pleaded that Defendants took adverse action against him and therefore has met the second element of the test.

18

### 3.   Causal Connection

Plaintiff asserts that Defendant Klee removed him permanently from the Warden's Forum fifteen days after Plaintiff filed a grievance against him.  (DE 1, ¶¶ 20 and 21.)  He also pleads that Defendants Barrett and Parsons increased his security level because of his activities on the Warden's Forum at his previous institutions.  He indicates that Defendants Barrett and Parsons maintained his increased security level after Plaintiff filed prison grievances and a federal complaint.  (Id. at ¶ 55.)  He was not moved until his April 2, 2012 Step II grievance, in which the prison official indicated that he had been placed in a higher security level because of administrative error.  (Id. at ¶ 48.)  Defendants do not address the causation element in their Motion.

The causation inquiry centers on the "subjective motivation of the defendants." *Thaddeus-X*, 175 F.3d at 399.  The adverse action must have been motivated "at least in part by the prisoner's conduct." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010.)  "Because direct evidence of retaliatory intent is rare, circumstantial evidence may be 'the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct.'" *Griffin*, 563 F. App'x at 420 (quoting *King*, 680 F.3d at 695).  Close "temporal proximity between protected conduct and retaliatory acts . . . creat[es] an inference of retaliatory motive." *King*, 680 F.3d at 695.  Here, Plaintiff has sufficiently

19

pleaded a close temporal proximity between his protected conduct of providing

legal redress to another prisoner, filing grievances, and filing a federal complaint

and Defendants' actions in removing him from the Warden's Forum, increasing his

security level, and maintaining that security level increase.[9]   A reasonable

inference could be drawn that these actions were motivated, at least in part, by

retaliatory animus.

Plaintiff has therefore sufficiently pleaded a *prima facie* case for retaliation

under the First Amendment.  Accordingly, I recommend that Defendants' Motion

to Dismiss be **DENIED**.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

---

[9] To be sure, temporal proximity between the protected conduct and the alleged retaliatory act is not, in and of itself, sufficient to make a retaliation claim.  *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007).  Here, however, Plaintiff alleges other evidence of retaliatory conduct, such as the inconsistent information he learned about the reasons for his security level increase (DE 1, ¶¶ 40, 47) and the prison guards' conversations about taking action against him to retaliate for his testimony to the Legislative Ombudsman (Id. at ¶ 17).  Because Plaintiff has pleaded temporal proximity in addition to other allegedly retaliatory conduct, he has sufficiently pleaded a causal connection for the purpose of this Motion to Dismiss.  *See Id.*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: April 16, 2015                     s/Anthony P. Patti
                                          Anthony P. Patti
                                          UNITED STATES MAGISTRATE JUDGE

21

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on April 16, 2015, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
(313) 234-5200