UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDLE GRIFFIN,

                Plaintiff,                      Case No. 2:14-cv-14290
                                                District Judge Matthew F. Leitman
v.                                         Magistrate Judge Anthony P. Patti

PAUL KLEE, *et al.*,

                Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DE 32)**

**I.**     **RECOMMENDATION**:  The Court should grant Defendants' motion for

summary judgment.  (DE 32.)

**II.**     **REPORT**

       **A.**     **Procedural Background**

       Plaintiff, a state prisoner proceeding without the assistance of counsel, filed

his complaint and application to proceed without prepayment of fees on November

6, 2014, bringing claims under 42 U.S.C. § 1983.  (DE 1, 2.)  In his complaint,

Plaintiff asserts that Defendants, Gus Harrison Correctional Facility ("ARF")

Warden Paul Klee, Lakeland Correctional Facility ("LCF") Inspector Roy Vest, G.

Robert Cotton Correctional Facility ("JCF") Deputy Warden Joe Barrett, and JCF

Assistant Resident Unit Supervisor ("ARUS") Michelle Parsons violated his rights under the First Amendment to the United States Constitution by retaliating against him for engaging in protected conduct.  Plaintiff asks the Court to award declaratory relief, along with compensatory and punitive damages.  He sues the Defendants in their individual capacities.   Plaintiff filed his first amended complaint on February 18, 2015, in order to indicate that Defendants were acting under the color of state law when they took action against him.  (DE 22.)  This matter is before me for consideration of Defendants' motion for summary judgment (DE 32) and Plaintiff's response (DE 33).

 **B.**   **Factual Background**

  In his amended complaint, Plaintiff describes three main incidents occurring at three Michigan Department of Corrections ("MDOC") correctional facilities: ARF, LCF, and JCF.  First, he asserts that he was permanently removed from the Warden's Forum due to a memorandum submitted by Defendant Klee.  Second, he posits that Defendant Vest subjected him to lock up and a prison transfer as a result of Defendant Klee's memorandum. Finally, he contends that Defendants Barrett and Parsons improperly increased his security level from II to IV.  Plaintiff

maintains that Defendants undertook these actions in retaliation for his engaging in protected conduct. I will address each alleged incident in turn.[1]

### 1.   Removal from the Warden's Forum

Plaintiff was first housed at ARF, where he was elected to the Warden's Forum.[2] (DE 22 at ¶ 15.) During the course of his duties, he allegedly saw an officer assault a fellow prisoner and gave an eye-witness account of the incident to the Legislative Ombudsman. Plaintiff asserts that either he or another inmate overheard corrections officers indicating that they would file false complaints against him in retaliation for his testimony to the Ombudsman. On March 4, 2011, Plaintiff lodged a formal complaint to Defendant Klee and filed a grievance against

---

[1] Because Plaintiff's amended complaint spans a fairly long timespan, three correctional facilities, and four Defendants, the following chart may help to clarify his claims:

| Defendant(s) | Institution | Plaintiff's Allegations |
| --- | --- | --- |
| Klee | ARF | Wrote memorandum recommending that Plaintiff be permanently removed from the Warden's Forum, which Plaintiff asserts was in retaliation for protected activity. |
| Vest | LCF | Put Plaintiff in lock-up and transferred him to JCF as a result of Defendant Klee's memorandum. |
| Barrett | JCF | Improperly increased his security level from II to IV. |
| Parsons | JCF | Improperly increased his security level from II to IV. Filed a false misconduct ticket against him. |

[2] The Warden's Forum is an elected group of prisoners that "advises the warden on prisoners' day to day concerns at their particular facility." *Griffin v. Berghuis*, No. 11-14876, 2012 U.S. Dist. LEXIS 139405, at *1 n. 1 (E.D. Mich. Aug. 3, 2012).

him for failure to address the retaliation.  (Id. at ¶ 20.)  On March 10, 2011, Plaintiff was removed from the Warden's Forum.  (Id. at ¶ 21.)  On or around March 22, 2011, Defendant Klee submitted a request to permanently prohibit Plaintiff's participation in the Warden's Forum.  (Id. at ¶ 32.)  Plaintiff was transferred to LCF in April 2011.

In December 2011, Plaintiff was elected to the Warden's Forum at LCF. Plaintiff attended one meeting of the Forum and "raised serious issues on behalf of uneducated prisoners whom otherwise could not seek redress without [P]laintiff's assistance."  (DE 22 at ¶ 23.)  On January 9, 2012, Plaintiff was informed that he had been permanently removed from the Warden's Forum due to a memorandum submitted by Defendant Klee.  Plaintiff filed a grievance against Defendant Klee for sending the request.  The grievance was denied at Step III.  (Id. at ¶ 29.) Plaintiff asserts that, based on the memorandum from Defendant Klee, Defendant Vest ordered him to be "locked up and transferred."  (Id. at ¶ 32.) On January 10, 2012, Plaintiff was transferred from LCF to JCF.  (Id. at ¶ 34.)

According to Defendants, Plaintiff was permanently removed from the Warden's Forum at every institution due to the results of a 2011 investigation conducted by Inspector Goldberg,[3] and not as a result of his engaging in any protected conduct.  In a memorandum dated March 22, 2011, Inspector Goldberg

_____

[3] It appears that two separate investigations took place in 2011 – one by Inspector Goldberg and one by Defendant Vest.

4

outlined his findings.  Specifically, he found that Plaintiff may have secured his position on the Warden's forum by "coercing the prior chairman into vacating the position."  (DE 32-2 at ¶7.)  In addition, the secretary of the Warden's Forum at ARF resigned due to threats made by Plaintiff.  (Id.)  He also noted that Plaintiff had been charged with a planned assault on another prisoner.  Finally, he concluded that Plaintiff had been removed from the Warden's Forum at a prior institution, such that he was ineligible to serve again until August 18, 2011.  (Id. at ¶ 10.)  Defendant Klee avers that he submitted a request that Plaintiff be permanently removed from the Warden's Forum because the results of the Goldberg investigation brought to light misconduct that he believed jeopardized the security of the facility.  (Id. at ¶ 6.)

### 2.    Solitary Confinement and Transfer from LCF to JCF

Plaintiff contends that Defendant Vest ordered that he be sent to solitary confinement at LCF and transferred to JCF.  Although his transfer took place on January 20, 2012, Plaintiff alleges that the transfer was made in retaliation for the February 15, 2012 grievance he filed against Defendant Vest.  He does not, however, indicate what conduct he believed that Defendant Vest was retaliating against.

Defendant Vest asserts that he was not aware that Plaintiff engaged in protected activity, and recommended the lock-up and transfer due to the results of

5

his own investigation, which named Plaintiff as an individual involved in an effort to take control of the Warden's Forum. (DE 32-5 at ¶ 6.) Defendant Vest further found that an ARF inmate requested Protective Segregation because Plaintiff threatened him with physical injury, and Plaintiff was issued a Class I misconduct violation in 2011 for Assault Resulting in Serious Physical Injury. *In addition*, Defendant Vest concluded that potential members of the Warden's Forum (including Plaintiff) were "planning to move forward with a collective agenda . . . including a possible assault and/or hostage situation . . . ." (Id. at ¶7.) Although Defendant Vest could not validate all of the information he received, and did not issue a misconduct violation against Plaintiff, he believed that Plaintiff posed a security risk and accordingly recommended to the LCF Security Classification Committee that Plaintiff be transferred to another correctional facility.

### 3. Security Level Increase

Plaintiff was transferred to JCF on January 20, 2012. When he arrived, he was housed in a Level II unit. After an hour, however, Plaintiff was informed that his security confinement status had been increased to Level IV. (DE 22 at ¶ 37.) Plaintiff received conflicting accounts as to why his security level had increased. According to Plaintiff, Defendant Parsons indicated that Defendant Barrett ordered that the security level be increased to monitor Plaintiff for trying to take over the Warden's Forum at his previous institutions. (Id. at ¶ 38.) Plaintiff filed a formal

6

complaint and a grievance about the increase in his security level and resulting lack of access to his legal materials. (Id. at ¶¶ 41-42.) The grievance was denied at Step I, with a note that the increase in security level was caused by a lack of bed space. (Id. at ¶ 46.) Through some discussions with other prisoners, Plaintiff learned that others were improperly moved to a bed in a lower security level before him. This apparently made him doubt the explanation that the security level increase was due to a lack of bed space and he appealed the grievance to Step II. At Step II, Plaintiff was moved to his previous security level with a note that, while Plaintiff should have been moved before the other prisoners, it was an unintentional administrative error that had been rectified. (Id. at 48.)

Defendants Barrett and Parsons maintain that Plaintiff was housed in a Level IV security unit because of a lack of bed space in Level II.

### 4.    The Instant Motion

Defendants filed the instant motion on June 15, 2015. (DE 32.) They argue that they are entitled to summary judgment because their decisions were based on reasons other than Plaintiff's exercise of a protected right. Specifically, they assert that Plaintiff was removed from the Warden's Forum and transferred as a result of his own actions and the security level increase was due only to a lack of bed space. Further, Defendants assert that they are entitled to qualified immunity because

Plaintiff failed to show that their conduct violated clearly established statutory or constitutional rights.

Plaintiff opposes the motion and asserts that genuine issues of material fact exist such that summary judgment is not warranted. Specifically, he disputes Defendants' sworn statements that they were unaware that Plaintiff engaged in protected conduct and would have taken the same measures against him regardless of his First Amendment actions. In support of this proposition, he provides a copy of the letter he sent to Defendant Klee, dated March 4, 2011, in which he states that he was engaged in "activities protected by the Constitution." (DE 33 at 34.) In addition, he provides an affidavit from his wife, in which she avers that she spoke to Defendant Parsons several times about Plaintiff's security level. (Id. at 40.) Plaintiff's wife states that Defendant Parsons told her that Plaintiff's security level was increased due to his attempt to "take over" the Warden's Forum at his previous institutions, and did not mention a lack of bed space. (Id. at ¶ 1.) Plaintiff also provides various grievance requests and a letter written while he was presumably a member of the Warden's Forum at an institution not described in his complaint. According to Plaintiff, this evidence demonstrates that his removal from the Warden's Forum and increase in security level were done in retaliation for his activities with the Warden's Forum.

**B.**   **<u>Standard</u>**

8

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

9

2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### C.    <u>Analysis</u>

To state a claim of retaliation under the First Amendment, Plaintiff must demonstrate that 1) he was engaged in protected conduct; 2) an adverse action was taken against him that would "deter a person of ordinary firmness" from continuing to engage in the conduct; and 3) there is a causal connection between the elements such that the adverse action was "motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The element most at issue in Defendants' motion for summary judgment is the third. [4]   Courts employ a burden-shifting analysis of the causation element in a retaliation claim:

> Once the plaintiff has met his [or her] burden of establishing that his [or her] protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he [or she] would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).  Furthermore, it is the "subjective motivation of the decision maker" which is at issue, and the plaintiff "must show that the decision was motivated, at least in part, by the plaintiff's protected activity."  *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

Here, Defendants argue that even where they were the decision makers, their decisions were based on reasons other than Plaintiff's exercise of a protected right and would have been taken even in the absence of protected conduct and as such Plaintiff cannot demonstrate causation.  I find their argument persuasive and conclude that Plaintiff has not introduced sufficient evidence to create a genuine

---

[4] Although the case law is clear that *participation* in the Warden's Forum is not protected conduct, it is unsettled in the Sixth Circuit as to whether *removal* from the Warden's Forum is sufficiently adverse to support a retaliation claim.  *Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014).  However, the Court need not address the adverse action element because Plaintiff's claims fail on the causation element.

11

dispute of material fact on this element.  I will address Plaintiff's claims against each Defendant in turn.

### 1.    Warden Klee

Defendant Klee contends that Plaintiff cannot establish the causation element related to his permanent removal from the Warden's Forum for several reasons: 1) he was unaware of Plaintiff's protected conduct; 2) he did not have authority to remove Plaintiff from the Warden's Forum and merely made the recommendation to the appropriate body; and 3) he made the recommendation that Plaintiff be removed based on the results of an investigation that indicated Plaintiff's actions jeopardized the security of the facility.  In support of his contentions, he provides an affidavit, the MDOC policy directive relating to the procedure for removing prisoners from the Warden's Forum, the results of the 2011 investigation conducted by Inspector Goldberg, and several of Plaintiff's misconduct reports.  (DE 32-2.)

Viewing the evidence in the light most favorable to Plaintiff, he has provided sufficient evidence to defeat Warden Klee's first argument.  Specifically, in response to Defendant Klee's contention that he was unaware of Plaintiff's protected activity, Plaintiff provides a letter dated March 4, 2011, from Plaintiff to Defendant Klee, in which he specifically wrote that the "was engaged in activities protected by the Constitution . . . ."  (DE 33 at 34.)  Although Defendant Klee

12

asserts that inmate complaints are a daily occurrence, such that he did not recall the letter or Plaintiff's various grievances, Plaintiff's evidence is sufficient to support at least constructive notice of the activity and to create a genuine dispute of fact on this issue.  However, Defendant Klee prevails on the second and third arguments.

First, Plaintiff has not provided sufficient evidence to dispute Defendant Klee's sworn statement that he was not the decision maker and therefore did not have authority to permanently prohibit Plaintiff from being a member of the Warden's Forum.   Defendant Klee avers that he did "not have the authority to permanently remove or prohibit a prisoner from being a housing unit representative," and that per the MDOC policy, only the Correctional Facilities Administration ("CFA") Deputy Director has such authority.  (DE 32-2 at ¶ 5.) The applicable policy, titled "Prisoner Housing Unit Representative/Warden's Forum," seems to bear this out, stating that a prisoner "shall be permanently prohibited from being a housing unit representative only with prior written approval of the CFA Deputy Director or designee."  (DE 32-2 at 9.)  Although the wording of the relevant section deals with housing unit representatives, the Warden's Forum procedures are found within the same policy and do not contain a separate process for removal from that body.

In response, Plaintiff asserts that Defendant Klee set his permanent removal *in motion* and therefore was the decision maker.  (DE 33 at 5.)   These statements

13

by themselves are insufficient to create a genuine dispute of material fact. *See Crawford-EL v. Britton*, 523 U.S. 574, 588 (1998) (concluding that "bare allegations of malice would not suffice to establish a constitutional claim."). Further, it is insufficient for Plaintiff to merely argue that Defendant Klee's ability to put his permanent removal in motion. *See Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (concluding that defendants were not decision makers, even where they instigated the plaintiff's firing, which was found to be an adverse action). Instead, Plaintiff "must show that [the defendant] had the ability and authority to take 'adverse action' against him." *Nettles v. Smoker*, No. 1:14cv1353, 2015 WL 1565429, at *6 (W.D. Mich. Apr. 8, 2015) (citing *Smith*, 250 F.3d at 1038 and *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999)); *see also Echlin v. Boland*, 111 F. App'x 415, 417 (6th Cir. 2004) ("The motivations of non-decisionmakers cannot establish a causal connection in a retaliation case."). He makes no such showing here.

Furthermore, Plaintiff has not provided sufficient evidence to create a genuine dispute of material fact that Defendant Klee would have acted differently in the absence of his protected conduct. Defendant Klee avers that he submitted the recommendation to the CFA Deputy Director as a result of the investigation conducted by Investigator Goldberg, which revealed "numerous instances of misconduct by [Plaintiff] which [Defendant Klee] believed jeopardized the security

14

of the facility and demonstrated [Plaintiff's] inability to follow the required rules."

(DE 32-2 at ¶ 6.)  To dispute this point, Plaintiff asserts that Defendant Klee took

action in order to retaliate against him and points to his own grievances as

evidence.  However, this is not sufficient to create a genuine dispute of material

fact for several reasons.  First, Corrections Officials have broad discretion in the

administration of prisons.  *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  In

describing the deference provided to prison officials in the management of their

institutions, the Sixth Circuit has stated that:

> because the daily operation of a correctional facility poses difficult
> and unique management problems, prison official should be accorded
> substantial deference in the adoption and implementation of policies
> and practices that in their judgment are needed to preserve internal
> order and discipline and to maintain institutional security.

*Brown v. Johnson*, 743 F.2d 408, 410 (6th Cir. 1984) (internal quotations omitted).

Thus, Defendant Klee's determination that the investigation revealed that

Plaintiff's further service on the Warden's Forum could have jeopardized prison

safety is given great weight by the Court.  Second, Plaintiff's insistence that

Defendant Klee acted in retaliation is insufficient to defeat Defendant Klee's

evidence, especially in light of the results of the investigation.  Plaintiff merely

points to his own allegations that Defendant Klee retaliated against him in order to

support his position.  This is insufficient to defeat Defendant Klee's properly

15

supported motion for summary judgment. *Crawford-El*, 523 U.S. at 599 (citing

*Liberty Lobby*, 477 U.S. at 256-57).

Plaintiff does note that he filed a grievance against Defendant Klee on

March 4, 2011 and he was removed from the Warden's Forum several days later,

on March 10, 2011.  While the temporal proximity between the filing of the

grievance and the decision to remove him from the Warden's Forum "provides

some circumstantial support for a causal connection . . . .  this evidence alone is not

sufficient to meet [Plaintiff's] burden to show that the filing of grievances was a

substantial or motivating factor" for his removal from the Warden's Forum.  *Smith*,

250 F.3d at 1038.  Accordingly, I conclude that Plaintiff has failed to create a

genuine dispute of material fact as to the causation element of his retaliation claim

with respect to his removal from the Warden's Forum.

### 2.    Inspector Vest

Plaintiff's claims against Defendant Vest relate to his order to lock Plaintiff

in solitary confinement and transfer him to JCF.  Plaintiff asserts that Defendant

Vest took these actions improperly as a result of Defendant Klee's memorandum

that Plaintiff was permanently prohibited from the Warden's Forum.  (DE 22 at ¶

32.)  As a preliminary matter, while placement in solitary confinement is sufficient

to constitute an adverse action, transfer from one prison to another is not.

*Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 470 (6th Cir. 2001).  The Court

16

need not consider Plaintiff's transfer for the purposes of the causation analysis because it fails on the adverse action element.

Like Defendant Klee, Defendant Vest also argues that he was not "authorized nor personally involved in the decision to remove [Plaintiff] from LCF's Warden['s] Forum, or the decision to house [Plaintiff] in Temporary Segregation . . . ." (DE 32-5 at ¶ 13.) Furthermore, he asserts that he would have taken the same action "with any prisoner, regardless of any grievance or any other factor." (Id. at ¶ 15.) In response, Plaintiff asserts that he was "informed by Acting Lieutenant Reincke that Insp. Vest ordered him to lock[] [P]laintiff up and transfer him due to Warden Klee's memo." (DE 33 at 12.) However, Plaintiff does not provide an affidavit or other sworn statement from Lieutenant Reincke, and again merely disputes Defendant Vest's sworn statement that he took action based on the results of his extensive investigation, and not based on Plaintiff's alleged protected conduct. Even if Defendant Vest's decision was in fact based upon information from the "Klee Memo," (DE 32-2 at 232), that memo indicates that Plaintiff's actions "have jeopardized the security of the facility," and thus provides a reasonable basis for Defendant Vest's actions, irrespective of any Warden's Forum activities. Furthermore, Plaintiff does not provide any evidence to indicate that Defendant Vest was aware of his protected conduct, other than his assertion that Defendant Vest "*must have known* about the protected activity." (DE

17

33 at 10) (emphasis added).  This is insufficient to create a genuine dispute of material fact for the purposes of summary judgment.

### 3. Deputy Warden Barrett

Defendant Barrett, in a sworn affidavit, avers that Plaintiff's placement in Level IV security, rather than Level II, upon his arrival to JCF was based on a lack of bed space.  (DE 32-6 at ¶ 5.)  Defendant Barrett also provides the MDOC Policy Directive "Prisoner Security Classification," which states that while prisoners should normally be placed consistent with their security level, "there may be reasons unrelated to security (e.g., medical mental health needs, lack of bed space at the appropriate level) which preclude such a placement."  (Id. at 8.)  He avers that he was not aware of Plaintiff's alleged protected conduct and would have taken the same action with any prisoner, based on the circumstances.

Plaintiff responds that Defendant Barrett was aware of his protected activity because when he arrived at JCF, unit officer Roberts stated "you are the one who tried to take over the Warden's Forum at ARF and LCF," and then began laughing.  (DE 33 at 17.)  According to Plaintiff, this indicated that *the entire prison staff* was aware of his activities.  He does not provide an affidavit or other statement from Roberts, but even if he had, unit officer Roberts' statement does not impute knowledge of Plaintiff's alleged protected conduct to Defendant Barrett.  In fact, Plaintiff's participation in the Warden's Forum was *not* protected conduct.  *Griffin*,

18

563 F. App'x at 420.  Plaintiff does not contend that Defendant Barrett was aware that Plaintiff filed grievances and complaints against Defendants Klee and Vest and retaliated against him for those actions.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Nor does he indicate that Defendant Barrett was aware that Plaintiff was providing legal help to other inmates who were not capable of handling their legal matters on their own.  *See Thaddeus-X*, 175 F.3d at 395.  Accordingly, Plaintiff fails to create a genuine dispute of material fact that Defendant Barrett was aware of his protected activity and retaliated against him for such conduct.

### 4.   ARUS Parsons

Plaintiff contends that Defendant Parsons improperly maintained his security level at IV for longer than necessary and issued an improper misconduct violation in retaliation for filing grievances and a lawsuit.  Defendant Parsons avers that she did not have the authority to change Plaintiff's security level.  She also notes that she issued the misconduct violation because the grounding wire in Plaintiff's fan had been cut.  Plaintiff was found guilty of the violation.

In response, Plaintiff provides two affidavits.  The first is signed by his wife, Veronica Thomas-Griffin.  Ms. Thomas-Griffin swears that she spoke with Defendant Parsons, who repeatedly told her that Plaintiff was being kept in Level IV to monitor his behavior because he attempted to take over the Warden's Forum

at ARF and LCF.  (DE 33 at 40.)  Plaintiff does not provide any evidence to indicate that Defendant Parsons was a decision maker capable of increasing or decreasing his security level.  In fact, the affidavit of Ms. Thomas-Griffin states that he would remain in Level IV for a year "per Deputy Joseph Barrett."  (Id.)  Furthermore, Plaintiff and his wife only reference his activity on the Warden's Forum, which (as addressed above) is not protected conduct.  At most, Ms. Thomas-Griffin's affidavit may demonstrate that Plaintiff received conflicting information as to why he was housed in Level IV security, some of which would appear to be speculative at best.  It does not demonstrate that such action was taken in retaliation for any allegedly protected activity in which Plaintiff engaged.  Therefore, Plaintiff's security level increase claim fails as it relates to Defendant Parsons.

Plaintiff also briefly alleges that Defendant Parsons issued a misconduct ticket with bad motive, but "does not challenge the misconduct" at issue. (DE 33 at 20.)  He provides the affidavit of a fellow inmate who overheard Defendant Parsons stating that Plaintiff "broke the fan and has no issues with writing all these cases on the department . . . ."  (DE 33 at 46.)  He also provides the affidavit of a fellow inmate and previous tenant of Plaintiff's cell, who averred that the ground wire had been cut prior to Plaintiff moving in and that prison officials Robertson and Warner (although not Defendant Parsons) were aware of this fact.  (Id. at 50.)

20

Despite this strong attempt to produce evidence, Plaintiff also fails on this claim. First, because he is unable to establish that Defendant Parsons's stated reason for disciplining him was known or suspected to be false, or was in any way retaliatory or done with bad motive. Second, because, "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates[a] retaliation claim.'" *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). In *Jackson*, the plaintiff alleged (as here) that prison officials filed false misconduct tickets against him in retaliation for protected activity. The Sixth Circuit concluded that the fact he was found guilty on those tickets demonstrated that there was "some evidence to support the charges," thereby dooming his retaliation claim. Here, Defendant Parsons provides the guilty finding on Plaintiff's misconduct charge (DE 32-7 at 7) and Plaintiff does not dispute that he was found guilty on the misconduct violation. Accordingly, Plaintiff's retaliation claim against Defendant Parsons cannot succeed on this basis.

In conclusion, Defendants' motion for summary judgment should be **GRANTED** because Plaintiff has failed to introduce a genuine dispute of material fact as to the existence of a causal connection such that the adverse actions taken against him were motivated at least in part by his protected conduct. Even if, for the sake of argument, I were to construe some of Plaintiff's evidentiary assertions

21

as being colorable—for instance, his taking issue with inconsistencies in the reasons given by different prison officials for his security upgrade or his quibble about who cut the wire on his fan—summary judgment is still appropriate here, where the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.,* 43 F.3d 244, 254 (6th Cir. 1994).[5]   Accordingly, summary judgment in favor of all of the remaining defendants is recommended.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

---

[5] Defendants also assert that they are entitled to qualified immunity because they did not violate any clearly established statutory or constitutional rights.   Because I addressed Defendants' motion on the merits and concluded that Plaintiff has failed to establish a constitutional violation, and because their qualified immunity argument is largely the same as their retaliation argument, I will not address this issue separately.

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 28, 2015       s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

The hereby certify that a copy of the foregoing document was sent to parties of record on September 28, 2015, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti