UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDLE GRIFFIN,

    Plaintiff,

Case No. 14-cv-14290
Hon. Matthew F. Leitman

v.

PAUL KLEE *et al.*,

    Defendants.

_____/

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS (ECF #39) TO REPORT AND RECOMMENDATION (ECF # 35); ADOPTING REPORT AND RECOMMENDATION IN PART; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #32); AND DISMISSING PLAINTIFF'S AMENDED COMPLAINT (ECF #22) WITH PREJUDICE**

**INTRODUCTION**

Plaintiff Randle Griffin ("Griffin") is an inmate in the custody of the Michigan Department of Corrections ("MDOC"). Griffin alleges that several MDOC employees – Defendants Paul Klee ("Klee"), Roy Vest ("Vest"), Joe Barrett ("Barrett"), and Michelle Parsons ("Parsons") (collectively, "Defendants") – retaliated against him for exercising his First Amendment rights. Griffin has brought an action against Defendants under 42 U.S.C. § 1983. (*See* Amended Compl., ECF #22)

Defendants jointly filed a Motion for Summary Judgment on June 15, 2015 the "Motion"). (*See* ECF #32.) Griffin filed a response opposing the Motion on July 6, 2015. (*See* ECF #33.) The assigned Magistrate Judge issued a Report and Recommendation (the "R&R") on September 28, 2015, recommending that the Court grant Defendants' Motion. (*See* ECF #35.) Griffin has filed timely objections to the R&R (the "Objections"). (*See* ECF #39.) The Court has carefully reviewed the Objections and, for the reasons explained below, **OVERRULES** Griffin's Objections.

## **BACKGROUND OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS**

The Court sets forth a summary of only the essential facts that are relevant to a determination of the Objections.

In December 2011, Griffin was elected to the Warden's Forum at the Lakeland Correctional Facility ("LCF"). According to Griffin, the Warden's Forum "raised serious issues on behalf on [sic] uneducated prisoners whom [sic] otherwise could not seek redress without plaintiff's assistance." (*See* Amended Compl., ECF #22 at ¶ 23, Pg. ID 128.) On January 9, 2012, Griffin was permanently removed from the Warden's Forum. Griffin alleges that he was removed from the Warden's Forum because LCF's warden, Klee, wrote a memorandum recommending his removal. (*See id.* at ¶ 32, Pg. ID 129.) Griffin contends that Klee had him removed from the Warden's Forum because Griffin

had filed a grievance against Klee. (*Id.*) Defendants counter that Griffin was removed from the Warden's Forum because an investigation by Investigator Goldberg revealed that Griffin had threatened members of the Warden's Forum and threatened to kill another prisoner. (*See* Investigation Report, ECF #32-2, Pg. ID 233.)

On January 10, 2012, Vest, an MDOC Inspector at LCF, recommended that Griffin be transferred to another correctional facility. (*See* Vest Affidavit, ECF #32-5 at ¶ 12, Pg. ID 272.) Griffin alleges that Vest recommended the transfer based on Klee's memorandum and in retaliation for "assisting uneducated inmate's [sic] seek redress of their grievances . . . ." (*See* Amended Compl., ECF #22 at ¶ 51, Pg. ID 132.) Vest denies that allegation and says that he recommended the transfer because he received multiple complaints from other inmates indicating that Griffin, among other things, intended to take control of the Warden's Forum and stage an assault against a prison official. (*See* Vest Affidavit, ECF #32-5 at ¶¶ 6-10, Pg. ID 270-71.) On January 20, 2015, Griffin was transferred to the G. Robert Cotton Correctional Facility ("JCF").

When Griffin arrived at JCF, he was housed in a security Level II unit. But shortly after his arrival, Griffin was reclassified to security Level IV – a more restrictive security level. Griffin alleges that Barrett, a former deputy warden at JCF, reclassified Griffin to Level IV "because of a March 22, 2011 memorandum

3

issued by . . . Klee and a January 10, 2012 Notice of Intent issued by [LCF] Inspector Vest." (Barrett Affidavit, ECF #32-6 at ¶ 4, Pg. ID 278.) Barrett denies that allegation and says that Griffin's security level was raised "due to a lack of bed space at Level II." (*See* Barrett Affidavit, ECF #32-6 at ¶ 5, Pg. ID 278.)

Griffin also alleges that Parsons, an Assistant Resident Unit Supervisor ("ARUS") at JCF, improperly authorized his (Griffin's) placement in Level IV and refused to reclassify Griffin to Level II "in retaliation for complaints he filed against . . . Deputy Warden Barrett . . . ." (Parsons Affidavit, ECF #32-7 at ¶ 4, Pg. ID 293.) Parsons, however, asserts that she did not have the authority to determine Griffin's security level and that she did not cause his placement or retention in Level IV. (*See id.* at ¶ 5, Pg. ID 293.)

Griffin asserts the following claims against Defendants. First, Griffin asserts that Klee recommended his removal from the Warden's Forum in retaliation for his (Griffin's) filing a grievance against Klee and for his (Griffin's) providing an eyewitness account that Klee allegedly assaulted a fellow prisoner. (*See* Pls.' Response Br., ECF #33 at 1, Pg. ID 317.)

Second, Griffin alleges that Vest recommended that Griffin be sent to solitary confinement and eventually transferred from LCF to JCF "due to Warden Paul Klee's memo permanently prohibiting plaintiff's participation in any Warden's Forums." (*See* Amended Compl., ECF #22 at ¶ 32, Pg. ID 129.)

4

Third, Griffin alleges that when he was transferred to JCF, Barret improperly increased Griffin's security level from Level II to Level IV in retaliation for alleged rumors that he (Griffin) was "trying to take over the Warden's Forum." (*Id.* at ¶ 39, Pg. ID 130.)

Fourth (and finally), Griffin alleges that Parsons refused to lower Griffin's security level in retaliation for filing inmate grievances and a lawsuit against MDOC officials. (*See id.* at ¶ 55-56, Pg. ID 132-33.)

## **THE R&R**

The Magistrate Judge evaluated Griffin's claims against each Defendant individually. The Magistrate Judge first identified the three elements of Griffin's First Amendment retaliation claim: that (1) he was engaged in protected conduct; (2) Defendants took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the allegedly-protected conduct and Defendants' adverse actions. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Magistrate Judge concluded that each of Griffin's claims against Defendants failed because he had not established that Defendants took any retaliatory action against him for engaging in protected conduct. (*See* R&R, ECF #35 at 14, 17, 19, 20, Pg. ID 396, 399, 401, 402.) Specifically, the Magistrate Judge determined that

each Defendant would have taken the same action even in the absence of the allegedly-protected activity. (*See id.*)

The Magistrate Judge also assessed whether Defendants Klee and Parsons had the decision-making authority to authorize the allegedly retaliatory actions taken against Griffin. The Magistrate Judge concluded that Griffin did "not [provide] sufficient evidence to dispute Defendant Klee's sworn statement that he was not the decision maker and therefore did not have authority to permanently prohibit Plaintiff from being a member of the Warden's Forum." (R&R, ECF #35 at 13, Pg. ID 395.) Likewise, the Magistrate Judge concluded that Griffin did "not provide any evidence to indicate that Defendant Parsons was a decision maker capable of increasing or decreasing his security level." (*Id.* at 20, Pg. ID 402.) As a result, the Magistrate Judge concluded that neither Klee nor Parsons took retaliatory action against Griffin because they did not have final decision-making authority.

Griffin's Objections to the R&R (ECF #39) are described in detail below with respect to each Defendant.

## **GOVERNING LEGAL STANDARD**

This Court reviews *de novo* the portions of the R&R to which a party has have. *See* Fed. R. Civ. P. 72(b)(3).

6

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

**A.  Warden Paul Klee**

Griffin alleges that his participation in the Warden's Forum was protected conduct under the First Amendment and that Klee had him (Griffin) permanently removed from the Warden's Forum in retaliation for exercising his First Amendment rights. Klee denies this allegation, and he has submitted an affidavit in which he states, among other things, that he recommended that Griffin be

7

removed from the Warden's Forum based entirely upon the results of an investigation into Griffin's alleged misconduct by Investigator Goldberg. (*See* Klee Affidavit, ECF #32-2 at 2-7, Pg. ID 223-28.) Goldberg reported that Griffin had coerced and threatened another inmate and that Griffin had been involved in a violent attack on another inmate. (*See* Investigation Report, ECF #32-2 at 12, Pg. ID 233.) The Magistrate Judge concluded that in light of Klee's sworn statement that he acted against Griffin based upon the Goldberg report, Griffin could not establish that his allegedly-protected activity played any role in the adverse action taken against him. (*See* R&R, ECF #14 at 14-15, Pg. ID 396-97.)

Griffin objects that the Magistrate Judge should not have considered Inspector Goldberg's report because it was "self serving hearsay." (Objections, ECF #39 at 3, Pg. ID 418.) Griffin complains that the record does not contain any affidavits from any person with first-hand knowledge of his alleged misconduct that was described in the Inspector Goldberg's report. (*Id.* at 4, Pg. ID 419.)

But the relevant question with respect to the causation element of Griffin's First Amendment retaliation claim against Klee is not whether Investigator Goldberg's report was reliable, trustworthy, or admissible into evidence. Instead, the question is: did Klee rely entirely on the report when he recommended that Griffin be removed from the Warden's Forum? Simply put, if Klee relied entirely on the report, then Klee did not recommend Griffin's removal based in part upon

8

Griffin's allegedly-protected activity, and Griffin's claim against Klee fails. Griffin's insistence that the Goldberg report was untrustworthy hearsay simply has no bearing on the dispositive question of whether Klee acted against Griffin based on that report.

Griffin has not presented sufficient evidence to counter Klee's sworn statement that he based his recommendation to remove Griffin from the Warden's Forum on the Goldberg report and that he did not act against Griffin, even in part, based upon Griffin's protected conduct. Accordingly, the Magistrate Judge properly concluded that Klee is entitled to summary judgment and Griffin's objection is overruled.

**B.     Inspector Roy Vest**

In the Motion, Vest asserts that his recommendation to transfer Griffin to a different facility was not in retaliation for engaging in protected conduct. In Vest's sworn affidavit, he explains that he conducted an investigation into Griffin after he (Vest) received information that Griffin was planning to engage in disruptive behavior, including a possible assault against prison staff. (*See* Vest Affidavit, ECF #32-5 at 1-5, Pg. ID 269-73.) Vest says that his investigation corroborated some of the information he had received concerning the potential threat posed by Griffin. (*Id.*) Vest also says that during his investigation, he reviewed a memo from Klee explaining that Griffin had been permanently barred from serving on any Warden's

9

Forum. (*Id.*) Vest says that based upon his investigation, he concluded that Griffin posed a security risk, and he recommended to the Security Classification Committee (the "SCC") that Griffin be transferred to another facility. (*Id.*) The SCC thereafter decided to transfer Griffin to JCF. (*Id.*) Prior to his transfer, Griffin was placed into administrative segregation. (*Id.*)

The Magistrate Judge concluded that Vest was entitled to summary judgment because Griffin had not countered Vest's showing that he (Vest) took action against Griffin based upon the results of his investigation, not based upon any of Griffin's allegedly-protected conduct. In other words, the Magistrate Judge concluded that Griffin had failed to create a material factual dispute on the causation element of his retaliation claim.

Griffin objects that Vest's investigation relied upon unsubstantiated hearsay and that Vest lacked sufficient reliable and admissible evidence to support his conclusion that Griffin posed a threat to institutional security. (*See* Objections, ECF #39 at 6-8, Pg. ID 421-23.) But like his objection with respect to Defendant Klee, this objection misses the mark. The issue with respect to the causation element of Griffin's claim against Vest is not whether Vest's investigation and conclusions were reliable and based upon admissible evidence. Rather, the question is: did Vest act against Griffin based upon the results of his investigation? If Vest took action based upon his investigative work, and not based upon Griffin's

allegedly-protected activity, then Griffin's retaliation claim against Vest fails even if Vest's investigation was deficient in some respects. Griffin has not presented evidence to rebut Vest's sworn statement that he acted against Griffin based upon his investigation and not based upon any allegedly-protected conduct by Griffin. Thus, the Magistrate Judge correctly concluded that Griffin's retaliation claim against Vest fails.

### C. Deputy Warden Joe Barrett

Barrett concedes that he was responsible for reclassifying Griffin from Level II security to Level IV security. But Barrett has submitted a sworn affidavit in which he says that he did not know about Griffin's prior alleged protected activity when he made the decision to place Griffin in Level IV. (*See* Barrett Affidavit, ECF #32-6 at 2-3, Pg. ID 278-79.) Barrett added that Griffin was assigned to Level IV due to a lack of bed space in Level II. The Magistrate Judge concluded that Barrett was entitled to summary judgment because this statement showed that Griffin's allegedly-protected conduct did not in any way cause Barrett to act against Griffin and because Griffin did not offer any evidence to contradict Barrett's claimed lacked of knowledge.

Griffin objects on the ground that he has offered evidence that Barrett knew about his allegedly-protected activity. He has not. Griffin directs the Court to allegations in his sworn Amended Complaint, but those allegations do not properly

establish Griffin's alleged knowledge. The allegations recount hearsay statements from Defendant Parsons to the effect that Barrett knew about Griffin's allegedly-protected conduct. (*See* Amended Compl., ECF #22 at ¶ 39, Pg. ID 130.) But such hearsay cannot be used to create a material factual dispute on the issue of Barrett's knowledge. *See Sperle v. Mich. Dep't of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (party cannot rely upon hearsay to create a genuine issue of material fact).[1] Accordingly, the Magistrate Judge correctly concluded that Barrett is entitled to summary judgment and Griffin's objection is overruled.

## D. ARUS Michelle Parsons

As noted above, when Griffin arrived at JCF, he was placed in Level IV housing at the direction of Defendant Barrett. Defendant Michelle Parsons was the ARUS assigned to Griffin's Level IV housing unit at the Cotton facility. Griffin alleges that Defendant Parsons declined to place him on the "move-down list" – a list of prisoners to be moved to a lower security level when appropriate – and that

---

[1] The Court's ruling that Griffin cannot rely on hearsay statements to create a material factual dispute is not at all inconsistent with its ruling above that Klee and Vest are entitled to summary judgment even though the Goldberg investigation allegedly contains out of court statements by a group of declarants. The Court did not consider the Goldberg report or any of the statements therein for the truth of the matter asserted. Instead, as explained above, the sole relevant question with respect to that report was: did Klee and Vest rely upon it. In contrast, Griffin offers the statements identified above to prove the truth of an essential element of his retaliation claim. In this context, the statements are inadmissible hearsay. *See* Fed. R. Evid. 801(c). He may not use this hearsay to create a material factual dispute.

she did so in retaliation for his prior allegedly-protected activity. Griffin insists that this misconduct by Defendant Parsons prevented him from being transferred to a less restrictive, Level II housing unit.

Defendant Parsons has submitted a sworn affidavit in which she states that she did not have the authority to override Defendant Barrett's decision to house Griffin in a Level IV setting. (*See* Parsons Affidavit, ECF #32-7 at 3, Pg. ID 293.) This affidavit negates Griffin's claim that he was harmed by Defendant Parsons. Simply put, because Defendant Parsons could not have moved Griffin to a lower security level in contravention of Defendant Barrett's decision to place Griffin in Level IV housing, Defendant Parsons could have not retaliated against him in the manner he alleges.

Griffin has submitted two sworn statements – his own statement in the Objections and a declaration from his wife – that, he says, create a material factual dispute as to whether Defendant Parsons had the authority to place him on the move-down list. The Court concludes that these statements do not create a material factual dispute on the authority issue.

First, Griffin states under oath that Defendant Parsons did have the authority to place him on the move-down list (*see* Objections, ECF # 39 at 11, Pg. ID 426), but he offers no factual basis for that assertion. He does not aver that he has knowledge about the MDOC's chain of command, nor does he identify any facts

13

that would suggest that Defendant Parsons had the authority to override the express decision of her superior, Defendant Barrett (a deputy warden) concerning the level of housing in which Griffin should reside. While an MDOC employee in Defendant Parsons' position may *generally* have the authority to place inmates on the move down list, Griffin has not identified any evidence that could support a finding that she had the authority to do so *here* – in contravention of a directive issued by her superior.

Indeed, Griffin's own grievances concerning his custody level confirm that Defendant Barrett, not Defendant Parsons, was responsible for Griffin's continued confinement in Level IV. As Griffin remained in Level IV, he complained to Barrett and then filed a grievance against Barrett when Barrett did not cause him to be transferred to Level II. (*See* Grievance, ECF #33, Pg. ID 354.) Even five weeks in to his stay in Level IV, Griffin was complaining that Barrett, not Parsons, caused his confinement in the higher level. (*See* Grievance Appeal, ECF #33, Pg. ID 357.)

Second, the declaration of Griffin's wife does not support Griffin's claim that Defendant Parsons had authority over Griffin's custody level placement. Griffin's wife complains about Defendant Parsons, but she does not say that Parsons had the authority to move Griffin. On the contrary, Griffin's wife highlights Defendant Parsons' repeated statements that (1) Defendant Barrett

"ordered" that Griffin be placed in Level IV and (2) Griffin would have to remain in that level "per Deputy Joseph Barrett."

In sum, Griffin has not shown that there is a material factual dispute with respect to Defendant Parsons' denial that she played any role in Griffin's continued detention in Level IV. Accordingly, the Magistrate Judge properly concluded that Defendant Parsons is entitled to summary judgment.

## CONCLUSION

For the reasons explained above, **IT IS HEREBY ORDERED THAT:**

1. Griffin's Objections to the portions of the R&R addressed above are **OVERRULED**;

2. The portions of the R&R addressed above are **ADOPTED** and the suggestion in the R&R that summary judgment be granted in favor of all Defendants is **ADOPTED**;

3. Defendants' motion for summary judgment is **GRANTED**;

4. All claims asserted by Griffin in the Amended Complaint are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 23, 2016

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 23, 2016, by electronic means and/or ordinary mail.

                                        s/Holly A. Monda
                                        Case Manager
                                        (313) 234-5113